UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| ALEXANDER HATZEY,<br>individually and on behalf of all others<br>similarly situated<br><br>  Plaintiff,<br><br>v.<br><br>DIVURGENT, LLC,<br><br>  Defendant. | Case No.: 2:18-cv-191 |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Unopposed Motion for Settlement Approval and associated memorandum, ECF Nos. 32-33, which were filed in accordance with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. These matters were referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to a Referral Order from the United States District Judge. ECF No. 28; *see also* 28 U.S.C. §§ 636(b)(1)(B); Fed. R. Civ. P. 72(b); E.D. Va. Local Civ. R. 72. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Unopposed Motion for Settlement, ECF No. 32, be **GRANTED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Alexander Hatzey ("Hatzey") worked for Defendant Divurgent, LLC, ("Divurgent") as a consultant providing support and training for use of new recordkeeping systems to Divurgent clients at Lahey Medical Center in Boston, Massachusetts, between March 2015 and September 2015. ECF No. 1 at ¶¶ 12-14. Divurgent is a corporation that offers

information technology education services for the healthcare industry and maintains its headquarters in Virginia Beach, Virginia. *Id.* at ¶ 5. During the period he worked for Defendant at Lahey Medical Center, Plaintiff was classified as an independent contractor. *Id.* at ¶¶ 8-9. Hatzey was paid solely on an hourly basis, paid only for time he actually worked, and was not paid overtime. *Id.* at ¶ 15. Others similarly situated to Plaintiff worked for Divurgent providing the same or similar training and support to medical facilities across the United States for new electronic recordkeeping systems. *Id.* at ¶ 12. These individuals were also classified as independent contractors. *Id.* at ¶ 16.

Plaintiff filed a Complaint, ECF No. 1, on April 10, 2018, for a collective class action within which Plaintiff alleges Hatzey, and all those similarly situated (hereinafter "FLSA Collective Members" or "Members") were improperly classified as independent contractors, rather than employees of Divurgent, and were not exempt from the FLSA. *Id.* at ¶¶ 16, 28-36. The Complaint further alleged that, because the Members were improperly classified as independent contractors, they did not receive overtime pay for hours worked in excess of forty hours per week to which they were entitled. *Id.* at 1. Divurgent filed an Answer to Plaintiff's Complaint on May 22, 2018. ECF No. 22. On June 6, 2018, the parties filed a Stipulation to Stay Litigation for ADR and Tolling Agreement, ECF No. 24, and the Court entered a Stipulation and Order to Stay Litigation for ADR and Tolling Agreement, ECF No. 25, on July 13, 2018. The case was stayed until August 10, 2018, at which time Plaintiff filed a Motion for Settlement Approval with an accompanying memorandum, ECF Nos. 32-33. The Motion was referred to the undersigned for a report and recommendation by the United States District Judge on August 13, 2018.

According to the proposed Settlement Agreement, ECF No. 33, attach. 1, Defendant agreed to pay a total amount of $2,450,000.00 ("Gross Settlement Amount") to settle this action. In exchange, the named Plaintiff and all participating Members agree to release their claims against Divurgent. *Id.* Under the Agreement Hatzey is to receive $10,000.00 for his efforts in bringing and prosecuting the matter, Plaintiff's counsel will receive $816,666.67, which is one-third of the Gross Settlement Amount, and Plaintiff's counsel shall be reimbursed for out-of-pocket costs not to exceed $40,000.00.[1] *Id.* at 6, attach. 1. The remaining amount ("Net Settlement Amount") of money is to be divided among the Members proportionate to the number of unpaid hours of overtime worked by each Member. *Id.* at 3, 6. Members will receive a notice of settlement and a check in an amount proportionate to the number of overtime hours unpaid to that Member during the relevant period. *Id.* Each Member must cash his or her check within 180 days to participate in the settlement and release his or her claim against Divurgent. *Id.* Those Members who do not cash their checks will not release their claims against Divurgent. *Id.* At the end of the 180-day period, if the amount of uncashed checks exceeds $50,000.00, any money left over due to uncashed checks will be redistributed among the participating Members on a *pro rata* basis. *Id.* at 4. If the uncashed amount is less than $50,000.00, that amount will be donated to Public Justice, a legal non-profit. *Id.* If all 1,065 Members participate, the average payment will be $1,486.70. *Id.* at 7.

The Court held a hearing on Plaintiff's Motion for Settlement Approval on August 30, 2018. ECF No. 39. At the hearing, Carey Nash and Harold Lichten appeared on behalf of the Plaintiff and Laura Windsor appeared on behalf of the Defendant. As such, the Motion, ECF No.

---

[1] At the time of Plaintiff's Motion for Settlement Approval, Plaintiff's Counsel had incurred $7, 231.47 in actual costs and expect additional costs related to settlement approval and in-house administration and distribution of settlement to Members.

3

32, is now ripe for recommended disposition.

## II. ANALYSIS

All FLSA settlements must be approved either by the United States Department of Labor or the court. *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 374 (4th Cir. 2005), *reinstated on reh'g*, 493 F.3d 454 (4th Cir. 2007), *cert. denied*, 554 U.S. 909 (2008); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *Lomascolo v. Parson Brinckerhoff, Inc.*, 2009 WL 3094955 at *8 (E.D. Va. 2009). Such approval is required for both class actions and individual cases. *See Poulin v. Gen. Dynamics Shared Res., Inc.*, 2010 WL 1813497 at *1 (W.D. Va. 2010). "A proposed settlement should be approved if it reflects a reasonable compromise over issues actually in dispute." *Galvez v. Americlean Servs. Corp.*, 2012 WL 1715689 at *2 (E.D. Va. 2012). At the settlement hearing, "a court's role is . . . a balancing of likelihoods rather than an actual determination of the facts and law in passing upon whether the proposed settlement is fair, reasonable, and adequate." *Lomascolo*, 2009 WL 3094955 at *10 (citation omitted). "In addition to being fair and reasonable, in order to merit Court approval, the settlement must resolve a bona fide dispute over FLSA provisions." *Id.* at *16.

Factors the court weighs when considering approval of a FLSA settlement agreement for a class action include: (1) the extent of discovery conducted; (2) the stage of the proceedings; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the Plaintiffs; (5) the opinions of class counsel and class members; and (6) the amount of settlement in relation to the potential recovery. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir. 1975); *Lomascolo*, 2009 WL 3094955 at *11-16 (listing the factors in headings); *see also Patel v. Barot*,

4

15 F. Supp. 3d 648, 656 (E.D. Va. 2014) (listing similar factors for non-class action FLSA settlement approvals). Analysis of these factors demonstrates that the proposed settlement is reasonable.

Regarding the first factor, the parties reached a settlement agreement at the beginning stages of litigation. Despite the prompt settlement, however, Plaintiff claims the parties did engage in substantial discovery that included the production of payroll and timekeeping data for Plaintiff and all putative Members, and prepared detailed mediation statements and damages analyses. ECF No. 33 at 2; *see In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159 ("[A] reasonable judgment on the possible merits of the case is best achieved when all discovery has been completed and the case is ready for trial."). Plaintiff proffered at the August 30, 2018, hearing that this is one of several cases of its kind Plaintiff's counsel has handled, which aided the efficient discovery exchange and a prompt agreement to settlement.

Second, because Plaintiff's counsel has expended a collective 250 hours of effort related to the instant case and the parties are still in the early stages of the proceedings, there would be significant additional expense to both Plaintiff and Defendant were this case to move forward to trial. ECF No. 33 at 17. Plaintiff stated several reasons why settlement, even at this early stage in the proceedings, is appropriate, referencing multiple hurdles that Plaintiff would face in moving litigation forward. These include complications associated with the statute of limitations, class certification, the merits of Plaintiff's claim, and the ability to recover. *Id.* at 5, 8, 12, 13. Particularly, Plaintiff argued that the Settlement Agreement accounts for 75% of unpaid wages owed based on a three-year, rather than two-year, limitations period (providing further that Plaintiff believes there is significant risk Plaintiff could not prove Defendant's

conduct was willful, which is required to qualify for recovery under the three-year limitations period at trial, and further risk that Plaintiff may not recover at all). *Id.* at 5, 19. Related to class certification, Plaintiff contends, and Defendant concedes for settlement purposes, that the Members are similarly situated as each does essentially the same or very similar jobs, are subject to the same hours, and subject to the same pay schedule. *Id.* at 9-10. However, in reaching settlement, Plaintiff weighed risks of a contest of class certification, particularly considering the geographical spread of the Members, whose work is done across the United States. *Id.* at 12, 19.

Third, there is neither evidence, nor even a suggestion, of any collusion on the part of the parties. The Settlement Agreement was reached through mediation conducted by the Honorable Diane M. Welsh, retired United States Magistrate Judge for the Eastern District of Pennsylvania, on July 2, 2018. *Id.* at 2; *See Lomascolo*, 2009 WL 3094955 at *12 (noting there is a presumption that no fraud or collusion occurred in the absence of any evidence to the contrary) (citing *Camp v. Progressive Corp.*, 2004 WL 2149079 at *7 (E.D. La. 2004)).

Fourth, Plaintiff's Counsel are experienced in FLSA cases, employment law, wage and hour disputes, and class actions. Notably, Plaintiff's counsel stated this is just one of several cases of its kind counsel has litigated. Counsel's opinions and evaluation of the reasonableness of the settlement and recommendation to accept the settlement is some evidence of the reasonableness of the settlement. *See In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002).

Fifth, Plaintiff's counsel believes, and Defense Counsel agrees, that the settlement is a fair and reasonable compromise between the parties. ECF No. 33 at 11-12. Counsel further contended that the specific terms of the settlement are also fair and reasonable. *Id.* at 12-23

(discussing monetary terms, release of liability, and reasonableness of attorney's fees, service payment to Mr. Hatzey, and cost terms). Because the litigation never reached the stage at which even a preliminary certification could be made, there exists no class in the traditional sense. However, the terms of the settlement include only Members who cash or deposit their settlement check will be a part of the settlement and will release their claim against Divurgent. *Id.* at 3, 12. Thus, each Member individually will choose whether to opt into the settlement and release their claim upon receipt of a settlement check. *Id.* at 3.

Sixth, the amount of settlement in relation to the potential recovery is reasonable in light of the strengths and weaknesses in each party's case. Plaintiff's central claim was that Divurgent misclassified its consultants as independent contractors rather than employees, thereby improperly denying them overtime pay to which they were entitled. Defendant voluntarily began to reclassify consultants as employees and pay them overtime beginning in 2016. ECF No. 33 at 5. On the other hand, Defendant asserted that its consultants were properly classified as independent contractors, and that, because it voluntarily began to reclassify its consultants and pay them overtime any alleged misclassification was not willful. Further, because willfulness was in dispute, there was a question as to whether Plaintiff, if successful on underlying claim, was entitled to a third year of recovery and liquidated damages, an issue that was sure to be hotly contested at trial. *Id.* Consequently, the amount of settlement in relation to the potential recovery weighs in favor of approving the settlement.

To determine whether the Settlement Agreement is fair, the Court must have "some knowledge of the value of the released claims," otherwise, "the fairness of the compromise remains indeterminate." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010).

The Gross Settlement Amount accounts for 75% of Members' collective overtime pay over a three-year statutory period. Each Member's settlement figure is calculated using a formula that divides the Net Settlement Amount based on the number of overtime that Member worked during the relevant period. Because the Settlement Agreement requires each Member to opt in, any amount remaining after the 180-day period has expired, if over $50,000, will be secondarily distributed *pro rata* among the participating Members. If less than $50,000.00 remains, the remainder will be donated to the legal non-profit, Public Justice. Consequently, in reaching settlement, the parties compromised on both the amount of unpaid hours and the period of time for which such compensation will be provided. Assuming each of the 1,065 Members participate in the settlement, the average Member, after costs and fees, will receive slightly less than $1,500.00, and may receive additional payment if other Members do not cash or deposit their checks. Such a compromise is reasonable under these circumstances as the desired settlement fairly reflects the parties' wish to finalize all potential collective litigation, put an end to the expenditure of attorneys' fees and costs, and therefore end the uncertainty that accompanies litigation.

Finally, the Court must analyze attorneys' fees in approving the proposed settlement. The FLSA "contemplates that the wronged employee should receive his full wages plus the penalty without incurring any expenses for legal fees or costs." *Poulin,* 2010 WL 1813497 at *1 (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)). Therefore, "the FLSA requires judicial review of the reasonableness of counsel's legal fees to ensure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Id.* Here, Plaintiff's counsel seeks one-third

of the Gross Settlement Amount, or $816,666.67, in fees plus an amount not to exceed $40,000.00 in costs and expenses. While current actual costs are $7,231.47, the ability to receive additional costs not to exceed $40,000.00[2] accounts for future costs associated with settlement approval, providing notice of settlement to Members, and for proper in-house administration of the settlement award. ECF No. 1, 8.

The Court typically evaluates the reasonableness of attorneys' fees by comparing the requested amount to the lodestar amount, which is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008); *Mercer v. Duke Univ.*, 401 F.3d 199, 211 (4th Cir. 2005) ("[T]he determination of a reasonable fee is an intensively fact-bound matter for the trial court to determine in the sound exercise of its discretion."). "In deciding what constitutes a 'reasonable' number of hours and rate, [the Fourth Circuit] has instructed that a district court's discretion should be guided by the following twelve factors:"

> *(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.*

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) (citation omitted).

However, a fee award determined by percentage is preferred over the lodestar method in common fund cases such as this one. *See Savani v. URS Prof'l Sols. LLC*, 121 F. Supp. 3d 564,

---

[2] Plaintiff's Memorandum in Support mistakenly states costs are to be capped at $20,000.00, ECF No. 33 at 8, however the Settlement Agreement states costs are not to exceed $40,000.00, ECF No. 32, attach. 1 at 3.

9

568 (D.S.C. 2015) ("Within this Circuit, the percentage-of-recovery approach is not only permitted, but is the preferred approach to determine attorney's fees.") (citing *Goldenberg v. Marriott PLP Corp.*, 33 F. Supp. 2d 434, 438 (D. Md. 1998)); *Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009) ("The percentage method has overwhelmingly become the preferred method for calculating attorneys' fees in common fund cases."); *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 503 (E.D. Va. 1995) ("the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases"). Further, some courts have suggested that the percentage method with a cross-check against the lodestar method is ideal. *Hall v. Higher One Machines, Inc.*, 2016 WL 5416582 at *7 (E.D.N.C. 2016) (quoting *Phillips v. Triad Guar., Inc.*, 2016 WL 2636289 at *2 (M.D.N.C. 2016)) (in an FLSA case for the named plaintiff and on behalf others similarly situated, "the percentage of the fund method, supplemented with the lodestar cross-check, is the appropriate means by which to determine an award of attorneys' fees in this case.")).

In support of the request for attorneys' fees, Plaintiff's counsel states they have collectively spent over 250 hours advocating on behalf of Plaintiff, and the requested fees would be shared among the four (4) law firms involved in Plaintiff's case. *See* ECF No. 33, attachs. 2-5. The Court notes that breaking down the fee amount sought by hour, given the number of hours spent, would give counsel an hourly rate that would be a multiplier of the lodestar amount. Counsel conceded that the fee request is approximately 6.4 times Plaintiff's counsel's current actual lodestar, and approximately 5.45 times the projected lodestar. However, counsel contended that the lodestar method is a merely a guide and the circumstances of this settlement

make reasonable a fee award of one-third the Gross Settlement Amount. Specifically, counsel argued the Court should account for the significant amount of work still to be done in administering the settlement (and for which counsel is not requesting any fee), the substantial expertise of counsel, and noted that counsel ought not be penalized for resolving the matter quickly and efficiently. Plaintiff's counsel has substantial experience in wage and hour class and collective actions, with expertise in the area of worker misclassification. Plaintiff stated counsel's expertise was critical to achieving the favorable result in this matter. Plaintiff contended that an attorney's fees of one-third is also reasonable, and that proportion is consistent with a typical contingency fee. Plaintiff's counsel stated they took this case on a contingency fee basis, thereby absorbing the risk of an unfavorable outcome and the significant costs associated with litigating this case.

Given the unique circumstances in this case and the suitability of a percentage-based fee cross-checked with the *Robinson* factors cited above, the Court **FINDS** that the fee request is fair and reasonable. The attorneys who worked on this case are experienced practitioners who achieved a successful result. The percentage of the Gross Settlement Amount sought by the attorneys is reasonable based on their experience, competence, and the nature of this FLSA litigation. Finally, the Defendant does not challenge the amount of the fee requested.

Plaintiff's counsel also seeks costs of $7,231.47 incurred at the time of Plaintiff's Motion for Settlement Approval and seeks approval for prospective costs associated with the settlement approval proceeding, proper notice of the settlement to Members, and administration of the settlement award, with total costs not to exceed $40,000.00. "Costs that may be charged include 'those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to

11

a fee-paying client, in the course of providing legal services.'" *Edelen v. Am. Residential Servs., LLC*, No. CIV.A. DKC 11-2744, 2013 WL 3816986 at *15 (D. Md. July 22, 2013) (citing *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir. 1988)). The $7,231.47 is reasonable given the circumstance. While it is not typical for counsel to administer a settlement award, an in-house administration by Plaintiff's counsel will ultimately benefit the Plaintiff and Members by limiting overhead costs of hiring an outside administrator. Plaintiff's counsel is taking up this task for cost only and is not seeking any related fee for time to be expended. Total costs not to exceed $40,000.00 when considering the amount of incurred costs to date and expected future costs appear reasonable. Further, Defendant does not object. Thus, the Court **FINDS** these costs are reasonable.

Consequently, given the strength of the Plaintiffs' claims, the defenses advocated by Defendant, the uncertainty of damages, consideration of appropriate attorneys' fees and costs, and the general uncertainty and expense that accompanies all litigation, the Court **FINDS** that the proposed $2,450,000.00 settlement is fair and reasonable and in accordance with the purposes of the FLSA.

### III. RECOMMENDATION

For the aforementioned reasons, having heard and considered the evidence and being of the opinion that the compromise is fair and reasonable in light of the evidence presented, the undersigned **RECOMMENDS** that Plaintiff's Motion for Settlement Approval, ECF No. 32, be **GRANTED**.

### IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. The United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
October 9, 2018